**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

\* \* \*

| | |
|---|---|
| Jose Sotelo,<br><br>　　　　　　Plaintiff,<br><br>　v.<br><br>State Farm Fire and Casualty Company,<br><br>　　　　　　Defendant. | Case No. 2:23-cv-01541-MMD-DJA<br><br>**Order** |

Before the Court is State Farm Fire and Casualty Company's motion for a blanket protective order governing the parties' exchange of information. (ECF No. 17). While the parties agreed on nearly all provisions of the protective order, they reached an impasse regarding two provisions. Those include: (1) a provision about who should be able to view confidential information; and (2) a provision regarding the consequences of designating documents as confidential and then the Court subsequently granting a challenge to that designation.

**I.     Legal standard.**

Federal Rule of Civil Procedure 26(c) governs protective orders. Fed. R. Civ. P. 26(c). It provides that the "[t]he court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1). There are three types of protective orders in federal practice. *Federal Deposit Insurance Corporation v. Lewis*, No. 2:10-cv-439-JCM-VCF, 2015 WL 13667215, at \*1 (D. Nev. July 29, 2015). The first—protective orders—protect a person from producing information in response to a discovery request. *See, e.g.*, Fed. R. Civ. P. 26(b)(2), (c)(1)(A), (c)(1)(C)-(E). The second—sealing orders—protect a person's privacy interests by preventing the public from accessing court records. *See, e.g.*, Fed. R. Civ. P. 26(c)(1)(F)-(H). The third—blanket protective orders—are (typically) stipulated agreements between the parties that generally require discovery to be conducted in a certain manner or be kept confidential. *See, e.g.*, Fed. R. Civ. P. 26(c)(1)(B).

Rule 26(c) requires the moving party to make a "particularized showing" of Rule 26(c)(1)'s enumerated harms. *See Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1138 (9th Cir. 2003); *see* Fed. R. Civ. P. 26(c).  However, because protective orders, sealing orders, and blanket protective orders serve different purposes, the nature of the "particularized showing" that is required to obtain each order necessarily differs. *Federal Deposit Insurance Corporation*, 2015 WL 13667215, at *1.  So, a party cannot successfully oppose the entry of a blanket protective order by raising concerns about the public's right of access to judicial records or unsubstantiated fears that the party seeking the protective order is trying to avoid discovery.

Concerns about the public's right of access to judicial records are unsuccessful to oppose a blanket protective order because reliance on a blanket protective order does not justify the sealing of a court document. *See Kamakana v. City & Cnty. of Honolulu*, 447 F.3d 1172, 1183 (9th Cir. 2006).  A blanket protective order governs discovery, which occurs out of court. *Federal Deposit Insurance Corporation*, 2015 WL 13667215, at *1.  The public has no right to demand access to discovery materials that are solely in the hands of private party litigants. *Id.*

Unsubstantiated concerns that the party seeking the protective order is trying to avoid discovery are also unsuccessful to oppose a blanket protective order.  Blanket protective orders are designed to expedite the discovery process by permitting litigants to freely exchange sensitive information without the risk of disclosure. *See id.*  These orders are intended to facilitate the exchange of discovery documents, not prevent it, and typically make no findings that a particular document is confidential or that a document's disclosure would cause harm. *See Small v. University Medical Center of Southern Nevada*, No. 2:13-cv-00298-APG-PAL, 2015 WL 1281549, at *3 (D. Nev. March 20, 2015).

///

///

///

## II. Discussion.[1]

### *A. Focus groups.*

The parties' first dispute is whether the stipulated protective order should provide that information designated confidential may be disclosed to "[f]ocus groups if each volunteer/member of the focus group signs a confidentiality/non-disclosure prior to receipt of any documents or other materials that are subject to this Protective Order." (ECF No. 17 at 11). State Farm argues that focus groups are not associated with any parties to the case, are not actively working on the case, and do not assist in the preparation for any proceeding. (*Id.*). Instead, they are volunteers from the general public. (*Id.*). So, State Farm asserts that the blanket protective order should not allow Plaintiff to show State Farm's confidential information to a focus group. (*Id.*).

Plaintiff responds that the stipulated protective order would mandate that any focus group participants sign a confidentiality/non-disclosure agreement, so State Farm's fears are unfounded. (ECF No. 18 at 4). Plaintiff adds that, in conducting his research, he only found one case in which confidential information was withheld from a mock jury by excluding the jurors from the panel if they worked for a competitor. (*Id.*) (citing *In re Lithium Ion Batteries Antitrust Litigation*, No. 13-md-02420-YGR(DMR), 2017 WL 930317 (N.D. Cal. Mar. 9, 2017)). Plaintiff points out that State Farm has not advanced concerns about competitors. (*Id.*). And Plaintiff asserts to have a real need for potentially bringing this case before a mock jury or focus group to aid in streamlining the presentation for trial and to determine any potential biases from the prospective jury trial. (*Id.*).

State Farm replies that Plaintiff is improperly comparing mock jurors to actual jurors because actual jurors are determined after voir dire by *both* parties, are sworn to their civic duty, and become part of the judicial process. (ECF No. 19 at 4). On the other hand, focus groups are randomly selected members of the public over whom counsel and this Court have no control, so

---

[1] The parties also argue over whether State Farm's meet and confer was sufficient. The Court finds it was. It does not address this argument further.

there is no way for State Farm to know or monitor if focus group members divulge confidential information provided to them. (*Id.*). As a result, State Farm would not be able to enforce the protective order or take recourse if a focus group member were to violate it. (*Id.*).

The Court finds the Northern District of California handling of a similar issue in *In re Lithium Ion Batteries Antitrust Litigation* to be persuasive here. *See In re Lithium Ion Batteries Antitrust Litigation*, No. 13-md-02420-YGR(DMR), 2017 WL 930317, at *2-3 (N.D. Cal. Mar. 9, 2017). There, third party Canon U.S.A., Inc. objected to plaintiffs' subpoena, arguing that it sought commercially sensitive data, the disclosure of which data to competitors would harm Canon's business. *Id.* at *1. The court ordered plaintiffs and Canon to meet and confer regarding a protective order governing Canon's production. *Id.* But the parties were unable to resolve their dispute about a provision in the protective order allowing for disclosure of material designated as confidential and highly confidential to participants in a focus group or mock jury with no restrictions, amongst other provisions. *Id.* at *2. Canon proposed a provision that "a receiving party may only disclose Canon's material to participants in a focus group or mock jury 'so long as (1) such participants and their family members are not and have not been employed by a competitor of Canon USA.'" *Id.* At the court's request, Canon submitted a list of twelve competitors. *Id.* The plaintiffs argued that the provisions would effectively allow Canon to veto any future experts, consultants, and mock jury pool members, which would disrupt the plaintiffs' ability to prepare for trial. *Id.* at *3.

The court resolved the issue as follows

> As to the provision barring disclosure of Canon's material to any mock jury pool members who have ever been employed by Canon's competitors, or whose family members have ever been employed by Canon's competitors, this provision could have far-reaching, burdensome effects given the length of Canon's list of competitors. Moreover, the protective order already provides that mock jury pool members must agree in writing to keep Canon's information confidential and may not use it for any other purpose, and may not retain any copies of protected material or notes of any protected material…Accordingly, the court orders the following: if the [plaintiffs] disclose Canon's information to mock jury pool members in an identifiable manner, i.e., if the [plaintiffs] wish to provide Canon's information to the mock jury pool and specifically

> identify it as pertaining to Canon (rather than a fictional company or by generic description), then the [plaintiffs] may only disclose the material so long as such participants and their current or former spouses and/or partners are not and have not been employed by a competitor of Canon, as listed on the exhibit. No such provision applies if the [plaintiffs] disclose Canon's information to the mock jury pool in a manner that does not connect the information to Canon. The court declines to impose any further restriction on the disclosure to mock jury pool members.

*Id.*

Here, the Court finds that State Farm has raised legitimate concerns about the access that mock jurors and focus groups might have to its proprietary information. On the other hand, Plaintiff has asserted that using a focus group will be integral to his trial strategy. The Court finds that the Northern District of California struck a balance in *In re Lithium Ion Batteries Antitrust Litigation* that may be appropriate here. But the parties have not briefed whether they could replicate a similar solution. The Court will thus order the parties to meet and confer and address whether the Northern District of California's solution in *In re Lithium Ion Batteries Antitrust Litigation* would be workable in this case. If the parties determine that it is, they must include language addressing that solution in their stipulated protective order. If they do not, they may bring another motion for the Court to resolve the issue.

**B.      Sanctions.**

State Farm explains that Plaintiff wishes to include a provision stating that, "[t]he Parties further agree, should the receiving or requesting party be successful in obtaining an Order or Ruling indicating a designation is inappropriate, improper, or erroneously applied, that designating Party may be obligated to pay the attorney fees and costs associated with the successful filing of the motion before the Court." (ECF No. 17 at 12). State Farm argues that the protective order should not mandate attorneys' fees and costs because, "if a party believes that the other party acted in bad faith…the party requesting attorneys' fees and costs must meet the requirements under Fed. R. Civ. P. 37." (*Id.*).

Plaintiff responds that State Farm has misunderstood the sentence as mandating attorneys' fees and costs because the sentence states that the designating party "may" be obligated to pay attorneys' fees and costs. (ECF No. 18 at 5). Plaintiff argues that "[a]ll this language does is

remove a potential argument from Defendant that each party should bear its own fees when it has acted improperly in its discovery obligations. Obviously, this Court will decide if fees should be awarded. In truth, Defendant need not worry about this clause if it intended to act in good faith in designating items as protected under the agreement as the issue would never be raised." (*Id.*). State Farm replies that Rule 37 sanctions already exist to provide a remedy to address misconduct such that it is not necessary to include a provision for them in the protective order. (ECF No. 19 at 5). State Farm asserts that Plaintiff's attempt to do so is an attempt to widen the scope of Rule 37.

State Farm has the better argument. The Court is not inclined to enter language in a protective order that, even if it tempered by the word "may," is intended to preclude a party from bringing an argument in a potential, future motion. If a party believes that another party has engaged in sanctionable conduct, that party may bring the appropriate motion under the appropriate authority. Keeping this sentence out of the protective order will not change the relief available to the parties, but keeping it in might. The Court declines to do so. In any stipulated protective order that the parties submit, they must not include the sentence referenced above.

**IT IS THEREFORE ORDERED** that State Farm's motion for a protective order (ECF No. 17) is **granted in part and denied in part.** The Court grants State Farm's request that the Court find a protective order appropriate. The Court denies State Farm's request that it enter State Farm's proposed terms.

**IT IS FURTHER ORDERED** that the parties must meet and confer and attempt to stipulate to a protective order governing the exchange of discovery. The parties must discuss whether a solution like that discussed in the *In re Lithium Ion Batteries Antitrust Litigation* case would be workable here. If so, they must attempt to stipulate to language that incorporates that solution into the protective order. If they cannot agree whether the solution is applicable or if they cannot agree on the language to incorporate it, they may file the appropriate motion. The parties must file their stipulated protective order, or motion regarding the protective order language, on or before **July 1, 2024.**

**IT IS FURTHER ORDERED** that in any stipulated protective order that the parties eventually submit, they must not include the following sentence: "[t]he Parties further agree, should the receiving or requesting party be successful in obtaining an Order or Ruling indicating a designation is inappropriate, improper, or erroneously applied, that designating Party may be obligated to pay the attorney fees and costs associated with the successful filing of the motion before the Court."

DATED: May 30, 2024

_____
DANIEL J. ALBREGTS
UNITED STATES MAGISTRATE JUDGE